OPINION OF THE COURT
Harold Tompkins, J.
The Mayor of the City of New York established a special *788 commission headed by the Honorable Milton Mollen, former Deputy Mayor for Public Safety and former Presiding Justice of the Appellate Division, Second Department. The purposes of the commission are to investigate allegations of police corruption by holding hearings and examining witnesses, and review the police department’s existing procedures to make recommendations for reforms that will better safeguard the integrity of the police department. The authority of the Mayor to establish an investigatory special commission is the issue before the court on this petition. This issue arises in the context of a petition by the police Captains’ Endowment Association, the association for all police officers with the rank of captain, deputy inspector, inspector and deputy chief, that seeks an order holding that a special commission appointed by the Mayor for the investigation of allegations of corruption, popularly known as the Mollen Commission, is in excess of the Mayor’s jurisdiction. The City has cross-moved seeking dismissal of the petition on the grounds that the Mayor is acting within his authority as Chief Executive Officer in establishing the Mollen Commission. This court now holds that the Mayor, in establishing the Mollen Commission, is acting within his authority, that the Mollen Commission is legally constituted, that the Chairman of the Commission, Honorable Milton Mollen, has the authority as a Special Deputy Commissioner of Investigation to subpoena witnesses as well as the general investigatory powers.
On July 24, 1992, Mayor Dinkins issued Executive Order 42. This executive order established a Commission headed by Honorable Milton Mollen to investigate allegations of corruption, the effectiveness of the police department procedures to prevent and detect corruption and to recommend improvements and reforms in the existing procedures. The Mollen Commission was empowered to hold hearings, receive evidence and examine witnesses to enable it to perform these tasks. Pursuant to the executive order to comply with New York City Charter §§ 802 and 805, the Commissioner of Investigation designated Mr. Mollen as Special Deputy Commissioner with subpoena power.
The government of the City of New York is modeled on the tripartite distribution of powers among the three branches of government: executive, legislative and judicial (see, Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344 [1985]; Subcontractors Trade Assn. v Koch, 62 NY2d 422 [1984]). The purpose of the separation of powers *789 doctrine is to better secure liberty by division of authority. The City Council has legislative authority and the Mayor may not encroach upon it (Under 21, Catholic Home Bur. for Dependent Children v City of New York, supra). Likewise, the Mayor is chief executive with the primary responsibility of managing and administering programs (see, Jones v Beame, 45 NY2d 402 [1978]). In this case, the establishment of a special commission within the Mayor’s office for the purpose of investigations, inquiries, holding hearings and making recommendations is within the Mayor’s authority.
A special commission to investigate general conditions and make recommendations for reforming procedures does not encroach on the Civilian Complaint Review Board since under section 440 of the New York City Charter this body investigates specific complaints against individual members of the police department and recommends disciplinary action (see, Kiernan v City of New York, 64 Misc 2d 617 [Sup Ct, NY County 1970], affd 35 AD2d 1081 [1st Dept 1970]). In Kieman, the court upheld the Knapp Commission as within the May- or’s authority and determined that as part of his duty to keep himself informed of the activities of city agencies and to enforce the law, the Mayor could establish a commission to investigate conditions in the police department. In holding that the Mayor had the independent power to establish the Knapp Commission to investigate systemic problems in the police force, Justice Harry Frank quoted from the dispositive appellate authority as follows (64 Misc 2d, at 621): " 'The Mayor is under a duty to communicate to the council annually a general statement as to the finances, affairs and activities of the city and its agencies; to recommend to the city council legislation which he deems necessary or desirable; to keep himself informed as to the activities of city agencies; to take measures for the efficient conduct of their business, and to cause all provisions of law to be enforced * * * He may command any investigation which will supply him with information required’ ” (quoting Matter of Dairymen’s League Coop. Assn. v Murtagh, 274 App Div 591, 594 [1st Dept 1948], affd 299 NY 634 [1949]).
The petitioners’ assertions regarding the merits of the Mollen Commission are not matters properly before this court (see, Jones v Beame, supra). The contention that a commission differently funded or with different members would be a better commission involves matters of judgment more appropriately addressed to the policy-making branches (supra; Rodgers v *790 Koch, 111 AD2d 727 [1st Dept 1985], affd 67 NY2d 821 [1986]). The hearings have not yet been held. When the hearing process is completed and the Commission issues its report, the public will be in a better position to judge the merits of the proposed reforms.
The court also finds the assignment of funds within the Mayor’s office to the Mollen Commission is a proper intraagency transfer that is permitted under New York City Charter § 107 (a). Finally the court holds that the Commission and its Chairman have subpoena powers, pursuant to the designation of the Commissioner of Investigation implementing New York City Charter §§ 802 and 805 as well as the general investigatory powers.
For the reasons set forth above, the City’s cross motion to dismiss the petition is granted.